**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**
**CRIMINAL ACTION NO.: 08-51-DLB**

**UNITED STATES,**                                              **PLAINTIFF**

**V.**

**SAM DROGANES,**                                              **DEFENDANT**

## REPORT & RECOMMENDATION

On October 7, 2008, defendant moved for return of his property - specifically, for the return of allegedly "legal"consumer-grade fireworks seized by the United States pursuant to search warrants on or about July 2, 2007.   The motion has been referred to the undersigned for initial consideration and a Report and Recommendation.[1] *See* 28 U.S.C. §636(b).

### I.  Procedural Background

The undersigned conducted a telephonic hearing on defendant's motion on November 24, 2008 and directed the United States to notify defense counsel by November 25 concerning the government's segregation of legal from illegal fireworks.  The court additionally ordered defense counsel to notify the court if not satisfied with the proposal provided by the government. Although extrajudicial resolution of the pending motion appeared likely on November 24, on December 23, 2008 the defendant notified the court that the parties were unable to agree on terms and that judicial resolution would be required.  The court thereafter scheduled a hearing on the motion for January 9, 2009.  The hearing was continued to January 12, 2009 to ensure the

---

[1]The defendant has also moved for the dismissal of the indictment against him, which motion was stayed by the presiding district judge pending disposition of the motion for the return of the defendant's property.

presence of a necessary witness.   On the same date, the defendant was arraigned on a superseding indictment and the trial date was continued from February 17, 2009 to March 16, 2009.

On January 12 the court held a full hearing on the motion, with Gary Sergent and Bruce McClure appearing on behalf of the defendant, Sam Droganes, and Elaine Leonhart appearing on behalf of the United States.  Mr. Droganes also was present.  Agent Scott Chard, an employee of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATFE) and the case agent on this case, testified as a witness.

## II.  Facts

In June and July of 2007 the ATFE sought and obtained seven search warrants for the following properties:  1) 207 Pike Street in Covington, Kentucky - 3 separate warrants; 2) a 1997 Chevrolet box truck owned by the defendant; 3) a warehouse located at 7900 Decoursey Pike, Taylor Mill, Kentucky; 4) a warehouse located at 4300 Boron Avenue, Covington, Kentucky; 5) the defendant's mother's residence in Ft. Mitchell, Kentucky; and 6) two seizure warrants for a total of ten "conex" boxes or international shipping containers intended for delivery to Premium Fireworks.  The seizures resulted in a confiscation of fireworks that can only be described as massive.  Case Agent Scott Chard testified that the seizure included "[c]lose to a milllion pounds of material, 44 tractor-trailer loads."  TR at 16.  Although the search warrant returns reflect the seizure of "explosives," the defendant now challenges the seizure of what he alleges were properly marked containers of consumer grade fireworks, which he argues are not within the legal definition of "explosives."

The defendant asserts that "a substantial portion" of the seized fireworks were purchased

by the defendant from the United States Bankruptcy Court, and that photographs produced by ATFE during discovery clearly show that the same fireworks are marked with labeling from that supplier. The defendant argues that such proof is sufficient for this court to order the return of those fireworks, at least, since the bankruptcy court presumably would not have sold "illegal" explosives. Likewise, the defendant advocates the return of additional fireworks that are labeled as consumer grade. The defendant additionally argues that a legal firearm was wrongfully confiscated even though it was not described in the search warrant. At an August 2008 meeting between counsel, and again in open court before the undersigned, the United States conceded that the firearm was legal and should be returned.

Even though the seizures occurred in 2007, it was not until nearly a year later, on July 10, 2008, that the defendant was indicted on criminal charges relating to the seizures. Until the date that criminal charges were filed, it appeared that the United States might seek a civil forfeiture. In fact, the United States obtained several extensions of time in which to file a civil forfeiture complaint. However, ultimately those extensions expired and the government elected to proceed with the instant criminal charges. No civil forfeiture proceeding has ever been filed.[2]

### III. Analysis

### A. Applicability of Rule 41(g)

The defendant seeks the return of his property under Rule 41(g), Fed. R. Crim. P., an infrequently used Criminal Rule that reads:

A person aggrieved by an unlawful search and seizure of property or by the

---

[2]The United States states in its responsive memorandum that an administrative forfeiture proceeding was commenced on July 20, 2007. However, the record reflects that no civil complaint has ever been filed.

deprivation of property may move for the property's return....The court must
receive evidence on any factual issue necessary to decide the motion.  If it grants
the motion, the court must return the property to the movant, but may impose
reasonable conditions to protect access to the property and its use in later
proceedings.

An Advisory Committee note to the rule explains further:

If the United States has a need for the property in an investigation or prosecution,
its retention of the property generally is reasonable.  But, if the United States'
legitimate interests can be satisfied even if the property is returned, continued
retention of the property would be unreasonable.

The United States initially argues in response to the defendant's motion that this court

lacks jurisdiction to consider a Criminal Rule 41(g) motion where a pending civil forfeiture

action provides an adequate remedy at law.  While this is no doubt an accurate statement of the

law, it does not apply to this case because there is no pending civil forfeiture action.  The United

States elected to proceed with criminal charges and deliberately chose to let its time period for

filing a civil action expire.

Though a relatively minor issue, there is no question under the same reasoning that the

firearm referenced in defendant's motion should have been returned some time ago.  Agent

Chard testified that in a meeting with defense counsel in August 2008 the ATFE agreed to return

a rifle that is not relevant to the criminal charges in this case and was inadvertently seized in July

2007.  Doc. 35, TR at 26.  Agent Chard further testified that ATFE agreed to return the rifle to

the defendant "as soon as the administrative forfeiture is cleared."  *Id.*  However, the record

shows no ongoing forfeiture proceeding other than the pending criminal indictment; therefore,

the United States will be directed to return the rifle forthwith.

### B.  The Government's Need To Retain the Property for Prosecution

The United States next argues that the defendant's motion goes to the merits of the

4

criminal case and therefore should not be considered prior to trial, when the defendant will have the opportunity to present evidence that some or all of the seized fireworks are not subject to criminal forfeiture.  I might agree if the United States were seeking the criminal forfeiture of *all* of the seized fireworks, because in that case Rule 41(g) would permit the retention of the entirety of the seized property as necessary for the prosecution.  However, the United States admits that it will *not* be seeking the forfeiture of all of the seized property (like the rifle) and in fact is willing to consider the return of fireworks that are determined to be of legal, consumer-grade quality.  Agent Chard likewise testified that ATFE has no interest in or jurisdiction over 1.4G fireworks, and that the process of inspection ATFE is currently engaged in is designed to separate the 1.4G grade material from the 1.3G grade material.   TR at 18.

The superseding indictment, like the original indictment, charges the defendant with one count of violating 18 U.S.C. §842(a)(1) (dealing in explosives without a license), three counts of violating 18 U.S.C. §842(a)(3)(A) (transporting explosives) and one count of violating 18 U.S.C. § 844(a)(3)(B) (distributing explosives).  The last count seeks the criminal forfeiture of some specifically identified items (i.e., "2 packs of Four Stage Ball Rockets (6 per pack)."  However, aside from the relatively small number of items identified with particularity, most of the items listed in the criminal forfeiture count are identified only as "explosives" seized pursuant to the various warrants in July 2007 (i.e.,  "explosives seized from warehouse located at 4300 Boron Avenue, Suite C, Covington, Kentucky").

Defendant's motion argues that the continued retention of a portion of the seized items - those that are admittedly consumer-grade fireworks -is not reasonable because such fireworks are admittedly not "explosives" and not necessary for the prosecution of this case.  The

defendant does not challenge the lawfulness of the original massive seizures, recognizing that the government required time for "a reasonable examination" to determine whether the seized goods were lawful or unlawful.  In fact, Agent Chard testified without contradiction that at the time of the original seizures, explosive experts from ATFE assisted with weighing and physically inventorying items subject to seizure.  TR at 8-9.   Given the volume of fireworks (a million pounds), however, it was logistically impossible to separate and segregate the items to determine at the time of seizure whether they were 1.3G or 1.4G.  TR at 9.

The defendant's central argument is that the passage of time without examination -  more than eighteen months since the original seizure- has rendered the continued retention of the legal portion of the fireworks "unreasonable" under the Rule.   The defendant represents and the United States does not dispute that the passage of time is likely to degrade the value of the legal fireworks.  Through his motion, the defendant specifically seeks an order "directing the United States to identify the specific fireworks that it contends are illegal fireworks under the Counts of the Indictment," and to "identify all the consumer...grade fireworks classified as 1.4G....to be returned to the Defendant immediately."

Federal Rule of Criminal Procedure 41(g) permits the return of seized property even when the initial search was lawful.  *See In re: Search of the Office of Ken Tylman, Worldwide Financial Svs., 913 17th Street, Charleston, IL*, 245 F.3d 978, 980 (7th Cir. 2001).  A Rule 41(g) motion may be brought "when the government holds the property an unreasonable length of time without the institution of proceedings that would justify the seizure and retention of the property."  *In re Documents and Other Possessions at Metropolitan*, 228 F.R.D. 621, 623 (N.D. Ill. 2005).  In such cases, the ultimate test of whether the property is returned is whether

continued retention is "reasonable."

Preliminary tests in the record suggest that the percentage of illegal fireworks is approximately 43.3%, with the remaining percentage of 56.7% presumably of the legal variety.[3] The United States concedes that it does not intend to seek criminal forfeiture of items determined to be consumer grade fireworks. However, the parties disagree on which fireworks should be characterized as legal 1.4G grade and which are the allegedly illegal 1.3G display grade. The government argues that additional time is necessary for its case agent to complete testing and inventory of the seized items. The government argues that a significant portion of this case involves mislabeling, such that seized items which are clearly marked as "consumer" grade fireworks, when tested, turn out to be illegal display grade or 1.3G fireworks.

Agent Chard testified that the fireworks are currently stored in Nebraska in roughly seven bunkers, or semi-underground buildings. TR at 10-11. As of the date of the hearing, agents had been working for approximately 3-4 weeks and had inventoried the fireworks contained in only two of those bunkers. Agent Chard testified without contradiction that many of the fireworks labeled as 1.4G are suspected to be overweight and therefore actually 1.3G fireworks, based upon both field and laboratory testing to date. TR at 17. For example, of 23 items recently inspected, 10 have been identified as being "overweight" which "potentially" could be 1.3G grade fireworks. Twelve items of the 23 have been determined to be 1.4G "legal" fireworks not subject to ATFE jurisdiction, but which ATFE is retaining pending further investigation by the

---

[3]The referenced figure appears in correspondence from the AUSA to defense counsel dated 11/25/08, which correspondence was provided to defendant in discovery and is attached as an exhibit to a status report filed by defendant on 12/23/08 in connection with the pending motion. The United States argues that the percentage of fireworks sought to be forfeited at trial may be higher based on additional, more recent test results.

Department of Transportation.  One item of the 23 has not yet been classified.  TR at 22-23.

### C.  DOT Inspection/ Investigation of Future Charges

In addition to inventorying and segregating 1.4G from 1.3G through sample testing, which ATFE anticipates will require another three weeks, the government seeks continued retention to permit analysis of the otherwise legal 1.4G grade fireworks by the Department of Transportation.  *Id.*  The Department of Transportation is the agency that assigns a "part number" to each item being imported into the United States.  The Department of Transportation also identifies "an EX number," or shipping number.  A number of the fireworks in the conex shipping boxes that were seized after importation from China appear to lack EX numbers.  The Department of Transportation requires at least a week to verify the authenticity of identifiable part numbers.

ATFE seeks additional time to coordinate efforts with DOT to determine whether some of the identified 1.4G fireworks, which are exempt from being classified as explosives by the ATFE, *see* TR at 15, should in fact be further separated/ retained due to potential record-keeping violations identified by the Department of Transportation.  Case Agent Chard proposes to meet with DOT officials in Washington, D.C., after ATFE agents conclude their analysis in Nebraska.  Then, after meeting with DOT, ATFE agents would return to Nebraska to complete any additional separation of 1.4G grade fireworks identified as having inadequate records or markings by DOT.   Agent Chard testified that once laboratory testing is completed by ATFE, plus the additional meeting with DOT and additional weeks for separation of fireworks subject to as-yet-uncharged DOT civil violations, ATFE should have a final report within six weeks to two months to share with defense counsel concerning which fireworks will be returned as legal 1.4G

8

fireworks.[4]

Neither the original nor superseding indictment alleges forfeiture due to any violation of DOT regulations.  Defense counsel represented to the court that the defendant supplied DOT with certifications and EX numbers last fall.  Defendant objects to the ATFE's attempts to enforce any not-yet-alleged violations of customs regulations by DOT.   In fact, Agent Chard testified that ATFE has no jurisdiction over the importation of fireworks.  TR at 7.  Defendant argues that a violation of DOT regulations may or may not be enforceable in an administrative or civil proceeding by DOT, but should not and cannot be enforced in this criminal forfeiture proceeding.  Absent contrary authority by the United States, I agree.   The time for filing a civil forfeiture proceeding has expired, and the Government has not demonstrated a need to retain otherwise-legal 1.4G fireworks in connection with the current criminal forfeiture proceeding.

### D.  Timeliness of Segregation of Fireworks

The United States has a legal obligation to determine what fireworks are subject to forfeiture in the prosecution of this case.   While the court is not without sympathy for the difficulties in inventorying, testing and segregating such a massive amount of fireworks, the fact remains that the original seizures occurred in July 2007 but the United States undertook no significant examination or analysis of the material seized until December 2008.  With that analysis interrupted by a shutdown over the Christmas and New Year holidays, agents have completed only a small portion of their analysis more than eighteen months after seizure.   For these past eighteen months, Agent Chard testified that ATFE has paid its contractor, Heritage

---

[4]At that point, the defendant may well be entitled to conduct his own testing of the retained fireworks alleged to be subject to forfeiture.  It is unlikely, to say the least, that this could be completed prior to the existing trial date of March 16, 2009.

Disposal and Storage Company, approximately $87,000 per month.  TR at 34.  Although it is the prerogative of the prosecutor to evaluate the costs of prosecution, this court cannot help but note that the inordinate delays in evaluating the seized materials have resulted in the expenditure by the United States of more than 1.5 million dollars to date in storage charges alone, exclusive of the costs of transportation, investigation, and laboratory testing.  A significant percentage of the stored material appears likely to be returned to the defendant as legal property not subject to criminal forfeiture.

When questioned by the court, neither the AUSA nor Agent Chard could provide any adequate explanation.  Agent Chard testified that during the more than one-year  period between the seizure and the beginning of testing by the ATFE, the agency was following up its investigation through interviews, recovering additional fireworks, and trying to secure an appropriate laboratory able to handle the large volume of anticipated test samples.  TR at 29-31.  Although initial testing was begun in August of 2008, the report of that testing was not provided to ATFE until the end of October or mid-November 2008, and ATFE did not begin the process of segregating the 1.4G from 1.3G grade fireworks (which requires additional testing) until December 2008.  *Id.*

Despite the government's failure to date to timely analyze the property legally seized from the defendant, I conclude that the United States is entitled to retain all fireworks "labeled" as 1.4G for such time as is required to complete its testing.   The defendant has failed to demonstrate under Rule 41(g) that any specific property - save the rifle- should be returned to him immediately.  Only those fireworks determined by the United States to be 1.4G fireworks *after testing* are subject to return under Rule 41(g), because the United States concedes that 1.4G

fireworks are not within the scope of the criminal indictment.

The court rejects the position of the defendant that all items superficially labeled as 1.4G fireworks are subject to return, or that all fireworks sold by the bankruptcy court are presumptively "legal." Agent Chard testified that at least some portion of fireworks labeled as 1.4G fireworks are in fact mislabeled. In other words, laboratory testing has revealed them to be illegal 1.3G display fireworks subject to criminal forfeiture under the indictment. While the defendant remains free to argue the labeling issue and/or to provide his own testing at trial, he is not entitled to the return of fireworks alleged by the United States to have been mislabeled or misidentified as 1.4G fireworks. Rather, it is reasonable and necessary for the United States to continue to retain any and all items alleged to be 1.3G display fireworks until such time as the factfinder determines whether they are subject to criminal forfeiture.

**E.  Ancillary Issues**

**Alleged Destruction of 1.4G Fireworks by Kentucky Authorities**

In his reply memorandum, the defendant asserts that the United States caused the "unnecessary and improper destruction of other legal consumer grade fireworks" at the time of seizure in July 2007, when ATFE consulted with the Kentucky State Fire Marshal's Office "to require the destruction of the firecrackers." To the extent that the defendant now seeks reimbursement from the United States for the alleged improper destruction of property by state authorities, this issue is not properly before the court. Even if the issue could be considered within the context of the Rule 41(g) motion, the defendant has failed to provide sufficient proof

of his allegations to warrant any relief in this proceeding.[5]

**Shipping and Storage Costs**

During a recess prior to the January 9, 2009 hearing, defense counsel noted that defendant has recently been presented with a bill totaling more than $300,000 for the retention of the shipping containers seized in July 2007 by the United States.  Agent Chard testified that the shipping containers were recently returned to the shipping company, approximately 3 weeks ago. TR at 32-33.  No separate motion has been filed concerning the third-party charges for the conex containers, which issue is not within the scope of Rule 41(g).

**IV.  Conclusion and Recommendations**

This court has the power under Rule 41(g) to fashion "reasonable conditions" when granting relief.  In this case the defendant has demonstrated that he is entitled to partial relief in the form of the immediate return of the firearm seized on or about July 2, 2007.  The defendant has further demonstrated that: 1) some portion of the fireworks seized and retained by the United States are legal 1.4G fireworks which are not subject to criminal forfeiture under the existing indictment; and 2) continued retention of legal fireworks would be unreasonable.  However, the defendant has failed to demonstrate that continued retention of all of the fireworks is unreasonable *at this point in time*, or that any specific fireworks ought to be returned, in light of testimony that the United States has yet to fully identify and separate the 1.4G fireworks from the 1.3G display fireworks for which it seeks forfeiture.   What the defendant has shown is that the delays by the United States in making this determination have been inordinately lengthy.

---

[5]Agent Chard testified that ATFE did not seize any "firecrackers" and that he had no knowledge of the destruction of any quantity of firecrackers at ATFE's direction.

The defendant also has demonstrated that additional delay to permit investigation by DOT into civil or administrative violations unrelated to this criminal proceeding would be unreasonable. Absent involvement by the DOT, the ATFE could complete its separation of the 1.4G from 1.3G fireworks within three weeks.  TR at 24.

Accordingly, **IT IS RECOMMENDED HEREIN THAT** defendant's motion for return of seized property [Doc. 17] be **granted in part** as follows:

1. The United States shall return defendant's rifle within fifteen (15) days of the date of this Report and Recommendation;

2. The United States shall complete its testing and provide to the defendant a list of legal 1.4G fireworks, along with a timetable for the return of that property, within thirty (30) days of the date of this Report and Recommendation.  This time period is based upon the court's prior conclusion that additional delay for examination by DOT is not within the scope of this criminal proceeding;

3. Defendant's motion is otherwise **denied** but without prejudice to renew should the United States fail to comply with its obligations.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service or further appeal is waived.  *U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)).  Poorly drafted objections, general objections, or objections that require a judge's

interpretation should be afforded no effect and are insufficient to preserve the right of appeal.

*Howard*, 932 F.2d at 509.  A party may respond to another party's objections within ten days of being served with a copy of those objections.  Fed. R. Civ. P. 72(b)(2).

This 21st day of January, 2009.

Signed By:

*J. Gregory Wehrman*

United States Magistrate Judge