UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CRIMINAL ACTION NO. 08-51-DLB-CJS**

**UNITED STATES OF AMERICA**                                                            **PLAINTIFF**

**vs.**                         **MEMORANDUM OPINION AND ORDER**

**SAM DROGANES**                                                                            **DEFENDANT**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

### I.  INTRODUCTION

This matter is before the Court upon the Defendant's Emergency Motion for Stay Pending Appeal (Doc. # 218), wherein Defendant moves the Court to stay its Preliminary Order and Judgment of Forfeiture (Doc. # 209) until Defendant's appeal is resolved at the Sixth Circuit Court of Appeals. The motion has been fully briefed (Docs. # 221, 226, 227), and is ripe for consideration. Because Defendant is not likely to succeed on his appeal of this Court's forfeiture order, and because the government continues to bear a significant cost in storing the forfeited fireworks, Defendant's motion is hereby **denied**.

### II.  PROCEDURAL POSTURE

Defendant's motion is the latest in a continuing feud between the Defendant and the United States over the seizure and now forfeiture of 1.3G display fireworks formerly owned by the Defendant. More than four and one-half (4 ½) years ago, Defendant was indicted by the grand jury in a six-count indictment, charging one count of dealing in explosives without a license in violation of 18 U.S.C. § 842(a)(1), three counts of receiving explosives

without a proper license in violation of 18 U.S.C. § 842(3)(A), and one count of distributing explosives without a proper license in violation of 18 U.S.C. § 842(a)(3)(B).  The original indictment also included a forfeiture count, which listed twelve specific fireworks that were illegally sold to an undercover agent, as well as all other fireworks seized by the government from various locations throughout Northern Kentucky and Cincinnati. On January 8, 2009, the grand jury returned a superseding indictment that included the same five substantive counts and the forfeiture count, but modified the dates of the alleged offense conduct (Doc. # 31).

Defendant filed four substantive pre-trial motions: a motion for return of property (Doc. # 17), a motion to dismiss the Indictment (Doc. # 18), a motion for a *Daubert* hearing (Doc. # 58), and a motion to suppress (Doc. # 66).  The motion for return of property highlights many of the contentious issues in this case, particularly those issues that are immediately relevant to the pending Motion to Stay.  In his motion for return of property, Defendant argued that *all* of the fireworks seized "[were] properly marked consumer fireworks and by definition are not 'explosives' subject to prosecution in this court." (Doc. # 17-1 at 2).  Thus, Defendant contended that it was unreasonable for the government to continue to withhold the fireworks, which were seized well over a year earlier.  (*Id.*).  As the motion makes clear, from the outset of this case the parties have disputed whether the seized fireworks were properly classified as 1.4G consumer fireworks or 1.3G display fireworks.

After referring the motion for return of property to the Magistrate Judge for a report and recommendation, the Court ultimately granted in part and denied in part Defendant's motion. (Doc. # 44).  The Court ordered that the government must complete its testing of

the fireworks, including the segregation of 1.4G and 1.3G fireworks, by no later than March 11, 2009. (*Id.*). The government was also required to provide a list of legal 1.4G fireworks, as well as a timetable for their return to the Defendant. (*Id.*). In apparent[1] compliance with the Court's Order, an AUSA sent a letter to defense counsel on March 11, 2009 containing a list of all the purported 1.4G fireworks. (Doc. # 119-1). The letter also informed that ATF believed all of the fireworks to be damaged and therefore unfit to be transported back into interstate commerce, but that ATF would compensate Defendant the wholesale price for the legal 1.4G fireworks. (*Id.*). Despite the government's representation, Defendant was never compensated for fireworks deemed legal 1.4G fireworks. Rather, those fireworks found to be legal 1.4G fireworks were recently returned to Defendant.

With his *Daubert* Motion and Motion to Suppress pending, Defendant moved for re-arraignment. (Doc. # 73). On July 31, 2009, Defendant entered a plea of guilty to Count 5 of the Superseding Indictment pursuant to a written plea agreement. (*See* Docs. # 74, 75). Before accepting his plea, the AUSA and the Court thoroughly reviewed the terms of the plea agreement with Defendant, and the Court entertained various clarifications from defense counsel about the scope of the agreement. (*See* Doc. # 77). At the outset of the re-arraignment, the Court confirmed with Defendant that he was entering a plea of guilty to Count 5 because he was, in fact, guilty of distributing explosive materials without a license as charged in the Superseding Indictment. (Doc. # 77 at 6-7). Defendant responded, "I'm pleading to Count 5 because I believe I'm guilty." (*Id.* at 7).

---

[1] In its August 21, 2012 Memorandum Opinion and Order, the Court held that the government did not, in fact, comply with the Court's orders. The Court will not restate that finding here, but instead incorporate by reference its previous findings. (*See* Doc. # 202, at 51-52).

The Court then asked Defendant multiple questions to ensure Defendant's plea was knowing and voluntary. (*Id.* at 7-9). First, the Court informed Defendant that pleading guilty of a felony offense would deprive him of certain civil rights and the right to possess a firearm. (*Id.* at 7). The Court then confirmed that Defendant was satisfied with his retained counsel, that he had reviewed the written plea agreement, and that his counsel was able to answer any questions he had about the agreement. Additionally, the Court asked Defendant:

> Has anyone made any promises to you or assurances to you of any kind which are not contained in either the plea agreement or the plea supplement?

(*Id.* at 9). Defendant responded, "No, sir." (*Id.*). Finally, the AUSA provided an oral summary of the plea agreement, including a summary of two paragraphs that are immediately relevant to Defendant's presently pending Motion to Stay. Specifically, the AUSA stated:

> In paragraph 7, the defendant waives his right to appeal and the right to attack collaterally his guilty plea, conviction and any sentence that is within the guideline range as finally determined by the Court.

(*Id.* at 11). The AUSA went on to state:

> In paragraph 10, the defendant agrees to forfeit to the United States any and all interest in the items listed in Count 6 of the superseding indictment that have been determined by ATF to be display fireworks, and he agrees to execute any documents necessary for this forfeiture, whether it's judicial or administrative.

(*Id.*).

Recognizing that the parties had disputed the classification of the fireworks as either 1.3G or 1.4G, the Court interrupted the AUSA in order to more fully review the forfeiture provision of the plea agreement with Defendant. The Court stated:

> I know we've had quite a few phone conferences on what is display, what is consumer, and the testing that was done and what should be returned or should not be returned, what the level of potential compensation is for the consumer fireworks that were destroyed in testing. All of those types of things which have been brought before the Court in one shape or fashion.

(*Id.*). The Court then confirmed with Defendant that he was agreeing to forfeit the fireworks consistent with the forfeiture provision:

> Well, Mr. Droganes, if something is determined to be a display firework, you understand that this plea agreement requires that you forfeit, whether it be judicial or administrative, any interest you have in those items?

(*Id.* at 12). Defendant responded, "Yes, sir, I do." (*Id.*). As this dialogue makes clear, Defendant confirmed that he agreed to forfeit *all* of the fireworks listed in Count 6 that were determined to be 1.3G display-grade fireworks. If any dispute remained between the parties, it was limited to whether the fireworks were properly classified as either 1.3G or 1.4G. (*See id.* at 13-14). Neither Defendant nor his attorneys gave any indication that a sufficient nexus between the fireworks and the underlying criminal conduct had not been established. Ultimately, the Court found that Defendant's plea was knowing and voluntary, and accepted his plea, adjudging him guilty of the Count 5. (*Id.* at 30).

Approximately two weeks prior to sentencing, the United States submitted a Proposed Preliminary Judgment of Forfeiture, stating:

> . . . [I]t is hereby;
>
> **ORDERED, ADJUDGED** and **DECREED** that the following property is hereby condemned and forfeited to the United States of America pursuant to Title 18, United States Code, Section 844(c)(1); to wit:
>
> All fireworks listed in Count 6 of the Superceding Indictment that ATF has deemed to be display fireworks.

(Doc. # 95-1).

Although this proposed language mirrored the plea agreement, Defendant objected, arguing that the Proposed Preliminary Judgment of Forfeiture was "void for vagueness, unenforceable and usurps the judicial authority of the court in this case and places that authority in an impermissible fashion in the ATF." (Doc. # 103). Additionally, despite his previous acknowledgment that the plea agreement encompassed his entire agreement with the government (*See* Doc. # 77 at 9), Defendant asserted,

> [a]t the time of [his] plea in this matter, it was anticipated that an agreement would be reached as to the classification of the seized fireworks between "consumer" and "display" by discussions between counsel for Defendant and the United States. Despite Defendant's efforts, those discussions have not occurred and Defendant has not been compensated for any consumer of 1.4G fireworks seized in these proceedings . . . .

(*Id.* 103). Finally, Defendant argued that the "Red List" – a list prepared by ATF that specifically listed fireworks determined to be 1.3G – contained fireworks which were clearly 1.4G consumer grade. (*See id.*). Notably, again, Defendant only objected to the government's characterization of the fireworks as 1.3G or 1.4G. Defendant did not, however, argue that the government failed to establish the requisite nexus between any of the fireworks and the substantive offense as required by Federal Rule of Criminal Procedure 32.2(b)(1)(A).

At sentencing, the Court briefly discussed Defendant's objections to the proposed Preliminary Judgment of Forfeiture with the parties. A review of the discussion again makes clear that the parties only disputed whether the seized fireworks were properly classified as 1.3G or 1.4G. For example, when the Court asked defense counsel how he would like to proceed on his objection, counsel stated, "I'll provide the United States with the items that I believe are approved 1.4Gs." (Doc. # 116 at 116-117). The AUSA then

suggested that Defendant's vagueness objection could be remedied if the government specifically listed in the Judgment of Forfeiture each of the 862 fireworks determined by ATF to be display grade. (*Id.* at 118). However, defense counsel responded, "[w]e don't agree that all of those 862 items are display fireworks." (*Id.*). In short, the parties continued to dispute the classification of the fireworks as either consumer or display grade. They did not dispute whether a sufficient nexus had been established pursuant to Rule 32.2(b)(1)(A). The Court ultimately ordered additional briefing (Doc. # 104), and then referred the objections to the Magistrate Judge for review and preparation of a report and recommendation.[2] (Doc. # 141).

After conducting a three-day evidentiary hearing and considering additional briefing, the Magistrate Judge issued an exhaustive R&R that, *inter alia*, described the government's seizure, testing and segregation of the fireworks. (Doc. # 186 at 1-7). In essence, ATF agents submitted one sample per type of firework for testing. The sample was disassembled, one "shot" within the sample was weighed and that weight was then multiplied by the number of shots within the sample to arrive at a total pyrotechnic weight. The total pyrotechnic weight was added to the weight of the propelling charge to arrive at a total weight for the sample. Based on the total weight of the sample, ATF agents were able to categorize all of the fireworks as either 1.3G, 1.4G or uncertain. Those classifications were recorded on various lists, which later became known as the red (display), green (consumer), and orange (uncertain of classification) lists. (Doc. # 181; Gov't Exs. 11, 12). The ATF ultimately classified approximately 862 different types of

---

[2] The Court also referred Defendant's Motion for Sanctions (Doc. # 119) and the government's Motion for Destruction of Property (Doc. # 142) to the Magistrate Judge.

seized fireworks as 1.3G fireworks; 366 types of fireworks were determined to be 1.4G or were unable to be classified.

Based on the evidence presented, the Magistrate Judge concluded that the government proved by a preponderance of the evidence that all of the fireworks on the red list were subject to forfeiture. (Doc. # 186 at 16). Specifically, the Magistrate Judge found:

> The evidence presented at the evidentiary hearing . . . supports a finding that the Government has established by a preponderance of the evidence that the fireworks contained on the Red List are 1.3G fireworks and are subject to forfeiture under 18 U.S.C. § 844(c)(1) as explosive materials intended to be used in violation of the provisions of § 842.

(*Id.*). In reaching this conclusion, the Magistrate Judge found each of Defendant's arguments about the inaccuracy of the red list to be unpersuasive. (*See id.* at 16-17). The Magistrate Judge then recommended that Defendant's objection to the proposed Preliminary Judgment of Forfeiture be sustained in part as being overly broad. She also recommended that the government be required to tender a proposed Preliminary Judgment of Forfeiture that specifically identified each of the fireworks on the Red List as being subject to forfeiture. (Doc. # 186 at 31). However, the Magistrate Judge opined that the fireworks on the Green and Orange list must be returned to Defendant because the government did not prove that those fireworks were 1.3G display-grade.

As the parties prepared objections to the R&R, the government conducted additional testing on the fireworks listed on the Orange, or unclassified, List. (Doc. # 202 at 13). Neither the Court nor Defendant were aware of this additional testing. (*Id.*). Nonetheless, the government produced a list classifying each of the fireworks on the Orange List as either 1.3G or 1.4G. (*Id.*; Doc. # 199-2). This list came to be known as the amended Orange List. The government also submitted a letter from the Director of the National

8

Center for Explosives Training and Research, explaining that ATF tested each of the fireworks on the Orange List "using the same protocol as they had during their examination of other items related to this investigation." (Doc. # 199-1).

After considering extensive objections to the R&R, the Court concurred with the Magistrate Judge's recommendations on the forfeiture issue. (Doc. # 202 at 56). The Court will not repeat its findings in full, but will only mention the primary justification for its holding. Agreeing with the United States, the Court held that Defendant was bound by the terms of his plea agreement, including the forfeiture provision. Specifically, the Court stated:

> In paragraph ten of Defendant's plea agreement, Defendant agreed to "forfeit to the United States any and all interests in the items listed in Count 6 of the Superseding Indictment *that have been determined by ATF* to be display [1.3G] fireworks . . . . " (Doc. # 105) (emphasis added). Count 6 listed each of the twelve 1.3G fireworks sold to the undercover agent on June 27, 2007 as well as all other fireworks seized from Defendant. The government argued that Defendant agreed to forfeit all of these fireworks to the extent that they were determined to be 1.3G fireworks by ATF. The Court agrees . . . .

(*Id.* at 15). In addition, the Court considered the Magistrate Judge's findings on the accuracy of the Red List, as well as Defendant's objections to those findings, and concluded,

> In the end, the government has proven by a preponderance of the evidence that the fireworks on the Red List (Doc. # 181, Gov't Ex. 11) and those identified as 1.3G fireworks on the recently amended Orange List (Doc. # 199-3) are, in fact, 1.3G fireworks subject to forfeiture pursuant to 18 U.S.C. § 844(c)(1) and paragraph 10 of the Defendant's plea agreement.

(*Id.*).

As a result of these finding, the Court entered a Preliminary Judgment of Forfeiture, stating:

9

> [I]t is ORDERED, ADJUDGED, and DECREED that the criminal judgment in this action is hereby amended, and that the property listed on the attached Red and Amended Orange List is hereby condemned and forfeited to the United States of America, pursuant to Title 18, United States Code, Section 844(c)(1).

(Doc. # 209). The Red and amended Orange Lists, totaling 80 pages and specifically identifying 944 types of fireworks determined by the Court to be 1.3G, were attached to the Preliminary Judgment of Forfeiture. The Court also entered an Amended Judgment ordering Defendant to forfeit his interest in all of the fireworks on the Red and Amended Orange List. (Doc. # 210 at 6).

On September 25, 2012, Defendant entered a Notice of Appeal of the Amended Judgment (Doc. # 210) and Preliminary Judgment of Forfeiture (Doc. # 209). By his presently pending motion, Defendant asks the Court to stay its Preliminary Judgment of Forfeiture until his appeal is resolved by the Sixth Circuit Court of Appeals. (Doc. # 218). Defendant fears that the fireworks will be destroyed once the Court enters a Final Judgment of Forfeiture, and asserts that his motion to stay must be granted to ensure that the property remains intact in the event that his appeal is successful.

### III. ANALYSIS

Pursuant to Criminal Rule 32.2(d), "[i]f a defendant appeals from . . . an order of forfeiture, the court may stay the order of forfeiture on terms appropriate to ensure that the property remains available pending appellate review." District courts within this Circuit consider four factors in determining whether to grant such a stay: (1) the likelihood of success on appeal; (2) whether the forfeited asset is likely to depreciate over time; (3) the forfeited asset's intrinsic value to the defendant; and (4) the expense of maintaining the forfeited property. *United States v. Clark*, No. 05-80810, 2007 WL 1140913 (E.D. Mich.

April 17, 2007); *United States v. Hronek*, No. 5:02-cr-142, 2003 WL 23374653 (N.D. Ohio Aug. 4, 2003). Defendant asserts that each of these factors weigh in his favor and a stay must be ordered. The Court, however, concludes that the first and fourth factors – the likelihood of success on appeal and the expense of maintaining the forfeited property – weigh strongly against ordering a stay, and outweigh the remaining factors.

### 1. Likelihood of success on the merits

In supplemental briefing, Defendant sets forth six reasons why he is likely to succeed on the merits: (1) the Court imposed a vague and overly broad Judgment of Forfeiture; (2) the Court erred in determining that the requisite nexus was satisfied in this case by ordering 1.4G fireworks to be forfeited; (3) the Court erred "by allowing the ATF to maintain possession of, and destroy property that is not within the jurisdiction of ATF (Doc. # 221-1 at 11); (4) "the Court incorrectly allocated the burden of proof regarding the existence of the requisite nexus when it determined that the items purchased from the Bankruptcy Trustee were not entitled to a presumption of legality" (*Id.* at 12); (5) "the Court incorrectly determined that the Plea Agreement controlled the forfeiture in this case" (*Id.* at 14); and (6) the Court erred in finding the requisite nexus between Defendant's personal collection and the substantive count of conviction. The government has responded that Defendant is not likely to succeed on appeal because he waived his right to appeal the forfeiture order and because the Court enforced the terms of the forfeiture provision of his plea agreement. Although the Court disagrees with the former argument, the Court does agree with the latter; Defendant is not likely to succeed on appeal because the Court appropriately enforced the terms of Defendant's plea agreement by ordering that all fireworks on the Red and Amended Orange list be forfeited.

### a.   Waiver of Appellate Rights

"It is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 764-65 (6th Cir. 2001) (quoting *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995). The waiver is enforceable so long as the defendant enters the plea agreement knowingly and voluntarily. *Id.* Here, Defendant agreed to waive his appellate rights as follows:

> The Defendant waives the right to appeal and the right to attack collaterally the guilty plea, conviction, and any sentence that is within the Guideline range as finally determined by the Court.

(Doc. # 105 at ¶ 7). The government argues that because forfeiture is component of sentencing, and because Defendant has waived his right to appeal a guideline sentence, Defendant has waived his right to appeal the Court's forfeiture order.

A review of Defendant's plea agreement in conjunction with the rearraignment colloquy indicate that Defendant did not waive his right to appeal the Court's forfeiture order. "Plea agreements are to be interpreted strictly, with ambiguities construed against the government." *United States v. Jones*, 569 F.3d 569, 572 (2009) (quoting *United States v. Caruthers*, 458 F.3d 459, 470 (6th Cir.), *cert denied*, 549 U.S. 1088 (2006)). Courts uniformly enforce appellate waivers that specifically waive the right to appeal a forfeiture order. *See United States v. Penland*, Nos. 06-5044, 07-4201, 2007 WL 2985299, at *1 (4th Cir. Oct. 15, 2007) (holding that the defendant waived his right to appeal forfeiture where the defendant's plea agreement stated, "[t]he Defendant agrees to waive all constitutional

and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture."); *United States v. Leitman*, 477 F. App'x 572 (11th Cir. 2012) (enforcing plea agreement in which the defendant "agreed to entry of money judgment against him . . . which is therefore property subject to forfeiture . . . " and that he "knowingly and voluntarily waived . . . any right to appeal the forfeiture"). Defendant's plea agreement, however, does not explicitly waive his right to appeal forfeiture. Instead, it generally states that he waives his right to appeal the sentence. Courts disagree about whether this sort of waiver precludes the defendant from appealing a forfeiture order. *Compare United States v. Adams*, 189 F. App'x 600, 601-02 (9th Cir. 2006) (finding that the defendant did not waive his right to appeal the forfeiture order where the plea agreement generally agreed to waive his right to appeal the sentence and "specifically [gave] up his right to appeal any fine and order of restitution the Court may impose . . . ."), *with United States v. Candelo*, 292 F. App'x 782, 784 (11th Cir. 2008) (holding that the defendant's sentencing appeal waiver, which stated that defendant agreed to waive his right to appeal any sentencing except for limited circumstances, also waived his right to appeal the forfeiture order).

A review of the rearraignment colloquy reveals the parties' understanding of the waiver provision. While Defendant acknowledged that he was waiving his right to appeal the sentence, as well as the Court's adjudication of various pre-trial motions, Defendant understood that forfeiture had yet to be finally determined and was, thus, not a part of the appellate waiver. (*See* Doc. # 77 at 25-27). Therefore, the Circuit Court will likely review the merits of Defendant's appeal.

### b. The Court properly enforced the terms of the plea agreement

Defendant is not likely to succeed when the Circuit Court reviews the merits of his appeal. In its August 21, 2012 Memorandum Opinion and Order, the Court determined that forfeiture was controlled by paragraph ten of Defendant's plea agreement. (Doc. # 202 at 15-17). The Court held that Defendant entered the plea agreement knowingly and voluntarily (*Id.* at 16), and specifically understood his agreement to forfeit *all* 1.3G fireworks listed in Count 6. (*Id.*). Therefore, the Court concluded that Defendant was bound by the terms of his plea agreement. (*Id.* at 17).

The Court then enforced the terms of Defendant's plea agreement.

> Having reviewed Defendant's plea agreement, the Court finds that Defendant agreed to be bound by the ATF's determination on which fireworks are 1.3G. Defendant also agreed to forfeit all fireworks listed in Count 6 of the Superseding Indictment that were determined to be 1.3G.

(*Id.*). As the Court also explained, this finding was consistent with Supreme Court precedent, which held that the forfeiture provision of a plea agreement is valid and enforceable so long as it was entered knowingly and voluntarily. (*Id.* at 15, 25 (citing *Libretti v. United States*, 516 U.S. 29, 38-42 (1995)). Although the Court enforced the terms of Defendant's plea agreement, the Court did not end its analysis there.

While Defendant agreed to be bound solely by the ATF's classification of the fireworks, the Court also reviewed the ATF's determination to ensure its accuracy. Adopting the Magistrate Judge's conclusion,[3] the Court found that the government proved

---

[3] While Defendant asked for the opportunity to conduct additional testing of those fireworks in his objections to the R&R, he did not specifically object to the Magistrate Judge's finding that the fireworks on the Red List were 1.3G fireworks.

by a preponderance of the evidence that each of the fireworks listed on the Red and Amended Orange list were, in fact, 1.3G fireworks. This finding was not required, but was made to ensure due process of law. In the end, Defendant agreed to forfeit each of the fireworks listed in Count 6 of the Superseding Indictment that were determined to be 1.3G, and the Court ensured that the government's classification was accurate. Therefore, the Court's Preliminary Judgment of Forfeiture, ordering that each of those fireworks be forfeited, is not likely to be overturned.

Defendant obviously disagrees with this conclusion, and argues the Court erred in concluding that his plea agreement controlled the forfeiture action. Specifically, Defendant asserts two arguments: (1) despite the terms of the plea agreement, the ATF did not have "jurisdiction" over the 1.4G fireworks and, therefore, did not have the authority to classify the fireworks; and (2) Defendant's understanding of the plea agreement was that he would only be required to forfeit 1.3G fireworks. Each of these arguments are incomprehensible to some extent and demonstrate a misunderstanding of the record. Nevertheless, neither argument has merit.

In his objections to the R&R, Defendant never challenged the ATF's authority to classify the seized fireworks. Failing to specifically raise this issue on objection from the R&R waives the argument on appeal to the circuit. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985). The issue was not preserved for appeal by raising it in briefing before the Magistrate Judge, as Defendant contends. Moreover, this argument is entirely without merit. The ATF is specifically charged with the authority to enforce federal law requiring both sellers and buyers of explosives to obtain proper licensing. *See* 27 C.F.R. § 555.41. As part of their duties, ATF must determine which fireworks are "explosives" as defined by

federal law. Thus, ATF clearly had the authority to classify the seized fireworks as either 1.3G or 1.4G.

Defendant's second argument – he believed his plea agreement only required him to forfeit 1.3G fireworks – is correct, but does not explain how he will succeed on appeal. The parties have always agreed that Defendant will only be required to forfeit 1.3G fireworks. This Court verified this agreement by asking Defendant during his rearraignment,

> [w]ell, Mr. Droganes, if something is determined to be a display firework, you understand that this plea agreement requires that you forfeit, whether it be judicially or administratively, any interest you have in those items? That's a negotiated term of this plea agreement. Do you understand that?

(Doc. # 77 at 12). Defendant responded, "Yes, sir, I do." (*Id.*).

Conforming with this agreement, the Court has required Defendant to forfeit *only* those fireworks that have been determined, by a preponderance of the evidence, to be 1.3G fireworks. Each of those fireworks are specifically listed on the Red and Amended Orange List (Docs. # 209-1, 209-2). While Defendant continues to believe 1.4G fireworks are listed on those lists, the Court disagrees. Ultimately, the Court has only ordered 1.3G fireworks to be forfeited, and Defendant is not likely to succeed with this argument on appeal.

### c. None of Defendant's remaining arguments concerning his likelihood of success on appeal have any merit

Defendant argues that the Court's Preliminary Judgment of Forfeiture is erroneous for four additional reasons. In his first and second arguments, Defendant essentially argues that the Court incorrectly ordered 1.4G fireworks to be forfeited. However, Defendant never specifically objected to the Magistrate Judge's finding that the government

proved by a preponderance of the evidence that the fireworks on the Red List were, in fact, 1.3G fireworks. Likewise, Defendant did not object to the Magistrate Judge's implicit finding that the government's testing procedures were reliable. Instead, Defendant seemed to acknowledge the Magistrate Judge's findings, but requested additional time to conduct his own testing before the Court entered a judgment of forfeiture. Failing to lodge specific objections to the Magistrate Judge's recommendation constitutes a waiver of the issue. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985). Moreover, Defendant would not prevail on the merits of this claim, as the government certainly proved by a preponderance of the evidence that the fireworks on the Red and Amended Orange list were 1.3G display grade.

Defendant also asserts that the Court "incorrectly allocated the burden of proof regarding the existence of the requisite nexus when it determined that the items purchased from the Bankruptcy Trustee were not entitled to a presumption of legality." (Doc. # 221-1 at 12). This argument, however, is premised on a faulty understanding of the Court's opinion. Despite the Magistrate Judge's finding that the government proved by a preponderance of the evidence that all fireworks on the Red List were 1.3G fireworks, Defendant continued to assert that any fireworks on the Red List that were purchased from the bankruptcy trustee should be presumed legal. (*See* Doc. # 202 at 18-19). Adopting the findings of the Magistrate Judge, the Court <u>first</u> held that the government proved the fireworks on the Red List were 1.3G fireworks despite being labeled as 1.4G. (*Id.*). The Court <u>then</u> moved on to disagree with Defendant's argument that the Court should presume fireworks purchased from the bankruptcy trustee were legal 1.4G fireworks. (*Id.* at 19). In short, the Court held the government to its burden, and then found that Defendant's arguments did nothing to cast doubt on the government's proof. In doing so, the Court did

17

not erroneously place the burden of proof on Defendant.

Finally, Defendant continues to argue that there is no nexus between the fireworks in his personal collection and the substantive count of conviction. Defendant raised this argument in his objections to the Magistrate Judge's report and recommendation. The Court disagreed with the objection, and ruled that the fireworks in Defendant's personal collection were subject to forfeiture to the extent they had been classified as 1.3G display grade. (*Id.* at 24-25). The Court is not persuaded that this was an erroneous finding.

### 2. Whether the forfeited fireworks are likely to depreciate over time

This factor is relevant to cases where the government intends to sell the forfeited property, and fears the property will depreciate in value while the appeal is pending. Here, the government has no concern as to the value of the fireworks. Instead, the government intends on destroying the fireworks as soon as possible, making this factor irrelevant to the Court's determination.

### 3. The forfeited fireworks' intrinsic value to the Defendant

While the forfeited fireworks certainly have significant monetary value, the intrinsic value of the fireworks appears to be minimal. A majority of the forfeited fireworks were a part of Defendant's inventory; their only value to Defendant was their resale value. A small minority of the forfeited fireworks were allegedly part of Defendant's personal collection, and have significant intrinsic value to Defendant as a collector of unique fireworks. However, when considered in the aggregate, the fireworks have little intrinsic value to Defendant.

Although the fireworks have little intrinsic value, this factor does not necessarily weigh against Defendant. In considering whether an asset has intrinsic value, courts are

generally concerned with whether a defendant will receive adequate, alternative compensation for the forfeited property in the event he succeeds on appeal. *See, e.g., United States v. Peters*, 784 F. Supp. 2d 234, 236 (W.D.N.Y. 2011) ("If [Defendant's] appeal of the forfeiture order succeeds, he will recover the proceeds of the sale of [the forfeited property] . . . "). Here, the government intends on immediately destroying the fireworks; there will be no alternative compensation if Defendant succeeds on appeal. In fact, destroying the fireworks will moot Defendant's appeal. Although this possibility appears significant on its face, the Court finds that this factor carries little weight because Defendant is not likely to succeed on the merits of his appeal.

### 4. Expense of maintaining the fireworks

The government has already incurred a significant expense by storing the seized fireworks over the course of this litigation. Over two years ago, the ATF estimated that they had already incurred $6,587,707.77 in storage costs. (Doc. # 142 at 1). The storage costs have continued to accrue since that time. In their briefing on the presently pending motion, the parties blame each other for these significant expenses. However, there is no need to address these arguments as they are not dispositive.

The relevant inquiry is the cost of storing the fireworks pending Defendant's appeal. The government represents that approximately 272,000 pounds of fireworks have been returned to Defendant, while approximately 600,000 pounds of fireworks remain stored and await destruction. (Doc. # 226 at 25). Those fireworks are being stored as hazardous materials in at least sixteen bunkers, with an estimated total storage cost of at least $38,976.00 per month. (*Id.*) Based on this estimate, the Court finds that the United States would incur substantial costs while the Sixth Circuit considers Defendant's appeal.

## IV.  CONCLUSION

Having weighed the applicable factors, the Court finds that the Preliminary Judgment of Forfeiture should not be stayed pending appeal.  Ultimately, Defendant is not likely to succeed on appeal, and the United States must not be required to incur any additional costs to store the forfeited fireworks.  Accordingly,

**IT IS ORDERED** that Defendant's Emergency Motion for Stay Pending Appeal (Doc. # 218) is hereby **DENIED**.

This 14th day of January, 2013.



Signed By:
*David L. Bunning*   DB
United States District Judge

B:\DATA\Opinions\Covington\2008\2-08-cr-51 MOO denying mtn to stay forfeiture.wpd